IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

KEVIN FRITZ LAMERIQUE,

     Plaintiff,

v.                              **Case No. 3:18-cv-00532**

UNITED STATES OF AMERICA,

     Defendant.


**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Plaintiff's *pro se* amended complaint filed pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971) ("*Bivens*") and Defendant's Motion to Dismiss. (ECF Nos. 7, 19). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Having thoroughly reviewed Plaintiff's allegations, the undersigned **FINDS** that Plaintiff's claims against Defendant are barred as Plaintiff is unable to bring a suit for money damages directly against the United States and his claims for injunctive relief are moot. Therefore, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendant's Motion to Dismiss, (ECF No. 19), and **DISMISS** Plaintiff's amended complaint, without prejudice. (ECF No. 7).

## I.  <u>Relevant Facts</u>

On December 20, 2017, a federal grand jury sitting in the Southern District of West Virginia returned a Second Superseding Indictment charging Plaintiff, Kevin Fritz Lamerique ("Plaintiff"), with attempting to corruptly obstruct, influence, and impede an official proceeding related to a multi-count drug conspiracy organized by Plaintiff's co-defendants. *United States v. Lamerique et al.*, Case No. 3:17-cr-00100-6 (S.D.W. Va. July 7, 2017) at ECF No. 110 at 11. On December 26, 2017, Plaintiff was arrested in Stony Point, New York. *Id.* at ECF No. 118. Plaintiff's initial appearance was held later that same day before Magistrate Judge Judith C. McCarthy in the United States District Court for the Southern District of New York. (ECF No. 19-1 at 3). Judge McCarthy ordered Plaintiff to be detained and issued a Medical Order directed to the Warden of the Westchester County Jail, or any other detention facility in which Plaintiff might be placed. (ECF No. 19-2 at 2). In the Medical Order, Judge McCarthy stated that during the initial appearance, Plaintiff's counsel had revealed that Plaintiff suffers from multiple sclerosis ("MS"). (*Id.*). Consequently, Judge McCarthy ordered "the Correctional Facility to provide [Plaintiff] with a full medical examination and provide any additional necessary medical treatment." (*Id.*). Shortly thereafter, Plaintiff was transferred by the United States Marshal's Service to the Southern District of West Virginia. (ECF No. 19-1 at 3).

Plaintiff filed the instant complaint on March 26, 2018, while incarcerated at the Western Regional Jail and Correctional Center ("WRJ"), located in Barboursville, West Virginia. (ECF No. 1 at 2). The complaint was filed by Ashley Carrington, acting as next friend of Plaintiff, in the United States District Court for the Southern District of New York. (*Id.* at 11). In the complaint, Plaintiff alleged that he had been denied medical treatment in contravention of the Medical Order issued by Judge McCarthy while

incarcerated at Federal Bureau of Prisons ("BOP") institutions located within the Eastern District of Pennsylvania, the Western District of Oklahoma, and the Eastern District of Kentucky. (*Id*. at 4). Plaintiff requested (1) to be sent to a hospital for the remainder of his detention; (2) that prison officials be ordered to transfer him to a hospital for treatment during MS attacks; and (3) that he be transferred back to Carter County Detention Center located in Grayson, Kentucky, where he had previously been incarcerated. (*Id*. at 5). On March 30, 2018, the Southern District of New York determined that the Southern District of West Virginia was the more appropriate venue for the complaint, whether characterized as a civil rights complaint or a petition under 28 U.S.C. § 2241, because Plaintiff was temporarily incarcerated in this district and because "the claims regarding [Plaintiff's] current medical treatment arise in West Virginia." (ECF No. 2 at 3).

On April 24, 2018, the undersigned issued an Order addressing deficiencies with the complaint as filed. (ECF No. 5). The undersigned noted first that while the complaint was filed by Ms. Carrington, as next friend of Plaintiff, Ms. Carrington provided "no supporting documentation corroborating that she has a legal right to prosecute the case on behalf of Plaintiff." (*Id*. at 1). The undersigned further informed Plaintiff that, in order to pursue a civil rights complaint, he must pay the $400 filing fee, or file an Application to Proceed without Prepayment of Fees and Costs. (*Id*. at 2). Finally, the undersigned confirmed that Plaintiff had been returned to the Carter County Detention Center as requested in his complaint, and was receiving treatment for his MS, which likely rendered his action moot. (*Id*.). The undersigned accordingly ordered Plaintiff to file an amended complaint resolving these issues, or a motion voluntarily dismissing the complaint. (*Id*.).

On May 23, 2018, Plaintiff paid the $400 filing fee and submitted an Amended Complaint naming the United States as the sole defendant and alleging a violation of his

civil rights. (ECF No. 7). In the amended complaint, Plaintiff indicated that he was currently housed at the Carter County Detention Center in Grayson, Kentucky. (*Id.* at 2). He complained that the Medical Order signed by Judge McCarthy was not being followed in that he had "requested medical treatment at four separate facilities which has not been received." (*Id.* at 3). Plaintiff explained that he suffered from severe MS and required an intravenous injection of Tysabri to be administered by a healthcare professional every four weeks; however, he had not received this treatment since being incarcerated. (*Id.*). Plaintiff described the location of the events giving rise to his amended complaint as follows:

> On or about January 19, 2018, Philadelphia Medical Center
> On or about February 1, 2018, Oklahoma Federal Detention Center
> On or about March 14, 2018, Carter County Jail
> On or about March 19, 2018, Carter County Jail
> On or about March 21, 2018, Western Regional Jail

(*Id.*). Plaintiff alleged that on January 19, 2018, he woke up and was unable to travel to the restroom due to his MS condition. (ECF No. 7 at 5). A nurse was called, and informed Plaintiff that prison staff would not "do anything unless [Plaintiff] was almost dead or passed out." (*Id.*). Plaintiff asserted that while incarcerated at the Oklahoma Federal Detention Center on February 1, 2018, he experienced problems with balance due to his MS. Plaintiff submitted a request to see a doctor, but the scheduled appointment was changed, and Plaintiff was transferred before he could be seen by a doctor. (*Id.*). Plaintiff stated that on March 14, 2018, while incarcerated at the Carter County Detention Center, he experienced a MS "attack" which resulted in spasms and numbness of the face, neck, and extremities. On March 19, 2018, while still at the Carter County Detention Center, Plaintiff experienced paralysis of his right foot and leg and was prescribed ibuprofen and prednisone, a steroid. Plaintiff claimed that the steroid treatment was "not good for his

condition," but he was told by a nurse, allegedly at the direction of the United States Marshal's Service, that if Plaintiff refused the steroids he would be "denying treatment." (*Id.* at 5, 7).

Plaintiff alleged that he suffered various injuries due to the above-described incidents, including "extreme pain," and temporary paralysis. (*Id.* at 5). Plaintiff further asserted that after being transferred to the WRJ on March 21, 2018, he was locked in a cell for 24 hours and only allowed to exit "once every few days to make a 5 minute phone call." (*Id.*). Plaintiff was unable to shower for four consecutive days and was only permitted one shower between his arrival at the WRJ on March 21 and his transfer from the jail eight days later on March 29, 2018. (ECF No. 7 at 5). According to Plaintiff, the conditions at the WRJ violated the Eighth Amendment's prohibition against cruel and unusual punishment, as well as the Medical Order issued by Judge McCarthy. (*Id.*). For relief, Plaintiff requested the same equitable relief as before, asking that this Court "send him to a hospital that will provide him his treatments for the remainder of time that he is incarcerated" and enter an order requiring Plaintiff to be brought to a hospital for the administration of Tysabri injections if Plaintiff suffers from another attack. In addition, Plaintiff sought an award of "monetary relief for the significant amount of suffering and trauma [Plaintiff] experienced while incarcerated." (*Id.*).

Plaintiff asserted that he filed several "complaints" related to the events described in his amended complaint; specifically, he made two complaints while at the WRJ; two complaints while at the Oklahoma Federal Detention Center; and one complaint while at Carter County Detention Center. (*Id.* at 7). Plaintiff claims that, in these complaints, he informed prison staff he required hospitalization due to his untreated MS condition and brain lesions, that the condition caused swelling of the brain, neck and spine and

temporarily paralysis, and that if left untreated, his medical ailments could lead to death. (*Id.*). Plaintiff reported that he received no result from his complaints submitted at the Oklahoma Federal Detention Center and the WRJ, and that following the submission of his complaint at the Carter County Detention Center, he was examined by a nurse who informed Plaintiff that "unless if [sic] you're dying we cannot send you to the hospital." (*Id.*). Plaintiff admitted, however, that he had never filed a "formal grievance." (ECF No. 7 at 8). Plaintiff explained that the institutions at which he was incarcerated had "a 2—3 complaint minimum to file a grievance" and "each time the plaintiff went to file a grievance the US Marshals moved plaintiff to a new facility thus preventing him of filing a grievance." (*Id.*).

On May 25, 2018, Plaintiff entered a guilty plea in the underlying criminal case. *Lamerique*, Case No. 3:17-cr-00100-6 at ECF No. 273. Plaintiff was released pursuant to an unsecured $10,000 bond and ordered to remain in the Southern District of New York until his sentencing hearing, which would require travel to the Southern District of West Virginia. *Id.* at 2. Plaintiff's sentencing hearing was scheduled to take place on August 27, 2018, but was continued until November 7, 2018 at Plaintiff's request. (ECF Nos. 324, 328). During this time, Plaintiff was released on bond and living in the Southern District of New York. (ECF Nos. 314, 351, 352).

On August 14, 2018, the undersigned entered an Order reminding Plaintiff of his obligation to effect service on Defendant within 90 days of filing the amended complaint, resulting in a deadline of August 22, 2018 to effect service. (ECF No. 8 at 1). On August 24, 2018, Plaintiff, via Ms. Carrington filing as next of kin, requested an extension of time to effect service. (ECF No. 9 at 1). On August 27, 2018, the undersigned responded, granting Plaintiff's requested extension and allowing him until September 22, 2018 to

effect service. (ECF No. 10 at 1). The undersigned further ordered Plaintiff to provide clarity regarding whether he was prosecuting the instant action personally, or through Ms. Carrington as next of friend. (*Id.* at 2).

On September 20, 2018, Plaintiff submitted a summons requesting service on "the Attorney General of the United States." (ECF No. 11 at 1). The summons listed both Plaintiff's name and address and Ms. Carrington's name and address on the space on the form provided for the plaintiff or the plaintiff's attorney. (*Id.*). On September 28, 2018, the undersigned issued an Order again directing Plaintiff to clarify whether he was prosecuting the action, or Ms. Carrington was doing so, and informing Plaintiff that the Clerk of Court was unable to issue summons with two plaintiffs listed on the service line. (ECF No. 12 at 1). Plaintiff was further advised that generally a third party lacks standing to bring claims on behalf of another in § 1983 cases, and that the "next friend" exception is limited to cases where the individual seeking to represent a plaintiff is able to establish that she truly is dedicated to the best interest of the represented party, usually established via a significant biological or legal relationship, and that there is a genuine difficulty preventing the plaintiff from representing himself. (*Id.* at 1-2). On October 12, 2018, Ms. Carrington issued a Response to the undersigned's Order, asserting that she is the biological sister of Plaintiff and attaching a birth certificate to that effect. (ECF No. 13 at 1). Ms. Carrington further claimed that it was necessary for her to prosecute the case on Plaintiff's behalf as Plaintiff's MS prevented him from effectively doing so. (*Id.* at 2). On October 17, 2018, Plaintiff issued a series of summons requesting service on the Attorney General of the United States, the United States Attorney's Office for both the District of Columbia, and the Southern District of West Virginia, and the Federal Bureau of Prisons. (ECF Nos. 14, 15, 16, 17).

Plaintiff's sentencing hearing was held on November 7, 2018, as scheduled, and he received a sentence of 12 months and one day imprisonment with three years of supervised release. (ECF No. 19-5 at 2-3). The sentencing judge recommended that Plaintiff be incarcerated close to Stony Point, New York. Plaintiff was released on the previously imposed bond and ordered to self-report to the designated facility. (*Id*. at 3). On December 11, 2018, Plaintiff's self-report date was extended to December 27, 2018, due to a scheduled medical appointment. (ECF No. 19-6 at 2). The record does not reveal to which institution Plaintiff initially reported; however, by January 7, 2019, Plaintiff was housed at the United States Penitentiary, Canaan ("USP Canaan"), located in the Middle District of Pennsylvania. (ECF No. 19-7 at 2).

On January 29, 2019, Defendant, the United States, filed a Motion to Dismiss the amended complaint and an accompanying Memorandum in support. (ECF Nos. 19, 20). In the Memorandum, Defendant argues the amended complaint should be dismissed for several reasons. First, Defendant contends that Plaintiff has filed suit directly against the United States, and sovereign immunity bars suits seeking money damages directly from the United States. (ECF No. 20 at 8-9). Second, Defendant notes that the only incidents alleged in the amended complaint that occurred within the territorial jurisdiction of the Southern District of West Virginia happened at the WRJ, an institution owned and operated by the State of West Virginia. Defendant asserts that the United States is not the proper defendant, because it cannot be held liable for the actions of state employees. (*Id*. at 9-10). Next, Defendant contends that, to the extent Plaintiff's claim is considered as being raised pursuant to the Federal Tort Claims Act ("FTCA"), Plaintiff is unable to bring a claim until he has exhausted administrative remedies as required by the Act. (*Id*. at 10-11). Defendant further argues that any requested injunctive relief is rendered moot as

Plaintiff is no longer incarcerated in any of the institutions where the allegedly unlawful conduct took place. (*Id.* at 12). Finally, Defendant asserts that venue is improper in the Southern District of West Virginia given that none of the allegedly improper conduct involving federal actors occurred in this district. (*Id.* at 14-15).

On January 31, 2019, the undersigned issued an Order informing Plaintiff that he had until February 22, 2019 to respond to Defendant's Motion to Dismiss. (ECF No. 21 at 1). Plaintiff was further informed that "ordinarily, a failure to respond within the allowed time can support a conclusion that Defendant's contentions are undisputed and may result in a dismissal of the complaint." (*Id.*). On February 25, 2019, Plaintiff filed a Motion requesting additional time within which to respond to Defendant's Motion to Dismiss. (ECF No. 22). In the motion, Plaintiff asserted that he was attempting to secure counsel and requested an eight-month extension of time so that he could look for an attorney after his release from prison. (*Id.* at 1).

On March 6, 2019, Defendant responded to Plaintiff's request and informed the Court that it did not object to an extension of time for Plaintiff to formulate a response, but did object to an eight-month extension and requested that the extension be limited to sixty days. (ECF No. 24 at 1-2). On March 7, 2019, the undersigned issued an Order, granting in part and denying in part Plaintiff's request for an extension. (ECF No. 25). The undersigned allowed an extension, giving Plaintiff until May 3, 2019 to respond to Defendant's Motion to Dismiss, but denied Plaintiff's request for an eight-month extension. (*Id.* at 2). The undersigned explained that such a lengthy extension was not justified considering that (1) Ms. Carrington, who was representing Plaintiff as next friend, was not incarcerated and was free to seek legal representation, and (2) Plaintiff had been released on bond for seven of the eleven and half months that the lawsuit was

pending, giving him more than adequate time to seek legal representation. (*Id.* at 1). Although the time for Plaintiff to file a response to Defendant's Motion to Dismiss expired on May 3, 2019, Plaintiff has not, to this date, submitted any response in opposition to the arguments advanced by Defendant.

## II.    <u>Standards of Review</u>

Defendant seeks dismissal under Fed. R. Civ. P. 12(b)(3) and (12)(b)(6). (ECF No. 19). A motion under Rule 12(b)(6) tests the sufficiency of the complaint to state a claim. A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires allegations that "raise a right to relief above the speculative level." *Id.* at 555. Consequently, the complaint must include "facts sufficient to state all the elements of [the plaintiff's] claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

Plaintiff filed his amended complaint *pro se*, and courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the amended complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass,* 324 F.3d at 765. The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

"On a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings." *Aggarao v. MOL Ship Mgmt. Co*., 675 F.3d, 365–66 (4th Cir. 2012). A plaintiff must only make a *prima facie* showing of proper venue in order to survive a motion to dismiss. *Id*. at 366. In assessing whether there has been a prima facie venue showing, the court draws all reasonable inferences in the light most favorable to the non-moving party. *Id*. Rule 12(b)(3) permits dismissal only when venue is "wrong" or "improper," which "depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Adkins v. Deangelo Bros*., LLC, No. CV 3:15-13151, 2016 WL 3982529, at *1 (S.D.W. Va. July 22, 2016).

## III.   **Discussion**

Plaintiff purportedly brings this lawsuit against federal agencies and officials and, as such, his constitutional claims are analyzed under the decision of the Supreme Court of the United States ("Supreme Court") in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which "established that victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such right." *Carlson v. Green*, 446 U.S. 14, 18 (1980). A *Bivens* claim is similar to a claim made under 42 U.S.C. § 1983; however, federal officials cannot be sued under § 1983 because they do not act under color of state law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 & n.30 (1982). *Bivens* actions and actions under § 1983 are treated as "counterparts," and case law interpreting the two is viewed as interchangeable. *See Farmer v. Brennan*, 511 U.S. 825, 839 (1994): *see also Fitzgerald,* 457 U.S. at 818 n.30; *Rios v. Slater*, No. CV 4:16-1314-MGL-TER, 2017 WL 1058453, at *2 (D.S.C. Mar. 2, 2017), *report and recommendation adopted*, No. CV 4:16-1314-MGL, 2017 WL 1048355 (D.S.C. Mar. 20, 2017). Violations of

the First, Fourth, Fifth, and Eight Amendments are cognizable claims under *Bivens*. *See Carlson v. Green*, 446 U.S. 14 (1980), *Davis v. Passman*, 442 U.S. 228 (1979), *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 755 (2018).

## 1. Venue

As an initial matter, Defendant argues that this action should be dismissed as the Southern District of West Virginia is an improper venue for these claims. (ECF No. 20 at 14). *Bivens* claims are governed by the general venue statute, 28 U.S.C. § 1391(e), which states in relevant part:

> A civil action in which a defendant is an officer or employee of the United States … or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which
>
> (A) a defendant in the action resides,
>
> (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C.A. § 1391(e)(1). If a court finds venue to be improper, the court should dismiss the case or, if justice requires, transfer the case to a district where venue is proper. *See Porter v. Groat*, 840 F.2d 255, 258 (4th Cir. 1988).

Here, the application of venue is complicated by Plaintiff's numerous transfers, which resulted in complaints involving correctional facilities in four separate judicial districts. (ECF No. 7 at 4). Moreover, Plaintiff did not initially file his lawsuit in this district and is no longer physically present within the district. Plaintiff describes two incidents that form the basis of his amended complaint as occurring in the Eastern District of Kentucky; one as happening while incarcerated within the Eastern District of Pennsylvania; one in the Western District of Oklahoma; and several deprivations

occurring at a state-operated facility within the jurisdiction of this Court. (*Id.*). Plaintiff filed his lawsuit while temporarily incarcerated in this district's territorial jurisdiction, and for that reason, the United States District Court for the Southern District of New York, where Plaintiff originally filed his complaint, transferred his case to this district.[1] (ECF No. 2 at 3). Soon after the Southern District of New York transferred Plaintiff's complaint to this district, he was returned to a detention facility in the Eastern District of Kentucky. (ECF No. 5 at 2). Plaintiff was then released on bond and ordered to return to the Southern District of New York, where he remained until at least December 27, 2018. *Lamerique*, Case No. 3:17-cr-00100-6 at ECF Nos. 273 at 2, 367 at 1. Plaintiff was then temporarily housed in the Middle District of Pennsylvania and is currently supervised through a Residential Reentry Center located in Brooklyn, New York, which is in the jurisdiction of the United States District Court for the Eastern District of New York.

Determining where venue properly lies in this case is further frustrated by the fact that Plaintiff complains of several discrete incidents occurring over a range of judicial districts, none of which has a particularly compelling claim as the location where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C.A. § 1391(e)(1). Given that Plaintiff was released to the Southern District of New York while on bond, and has continually listed a residence within the Southern District of New York as his permanent address, (ECF Nos. 11 at 1, 22 at 3), the Southern District of New York arguably is as appropriate a venue as this district. However, as several occurrences about which Plaintiff complains took place within this district, and given that no other district

---

[1] There is a split among the circuits regarding whether a prisoner's residence is properly considered as his place of incarceration, but "the weight of authority" has found that the prisoner's place of incarceration is not his residence for venue purposes. *See Harris v. Lappin*, No. CIV.A. 2:07 CV 58, 2008 WL 4371503, at *7 n.4 (N.D.W. Va. Sept. 22, 2008) (collecting cases).

clearly has a better claim to venue, the undersigned **FINDS** that the interests of justice and judicial economy are best served by considering Plaintiff's complaint on the merits, rather than transferring the case yet again. *See Washington v. Fed. Bureau of Prisons*, No. 516CV03913BHHKDW, 2019 WL 2125246, at *9 (D.S.C. Jan. 3, 2019), *report and recommendation adopted*, No. 5:16-CV-3913-BHH, 2019 WL 1349516 (D.S.C. Mar. 26, 2019) (considering the plaintiff's *Bivens* claim despite the fact that a number of the incidents described took place in BOP facilities outside of the district); *Adams v. Fed. Bureau of Prisons*, 716 F. Supp. 2d 107, 113 (D. Mass. 2010) (same).

### 2. Action against the United States

Defendant contends that Plaintiff's complaint must be dismissed, because he has brought the action directly against the United States in contravention of the requirement that *Bivens* claims be made against individuals. (ECF No. 20 at 8). Defendant is correct that Plaintiff has failed to name an appropriate defendant for a *Bivens* lawsuit. The Federal Government and its agencies are not subject to suit absent a waiver of sovereign immunity. *Loeffler v. Frank*, 486 U.S. 549, 554 (1988). "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Accordingly, a *Bivens* claim must be brought "against the offending individual officer, subject to the defense of qualified immunity," and, a "prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP." *Id.* at 72. Federal agencies are also inappropriate defendants in a case brought pursuant to *Bivens. See F.D.I.C. v. Meyer*, 510 U.S. 471, 485-86 (1994). Plaintiff's lawsuit against the United States for monetary damages cannot proceed under the exception to sovereign immunity established in *Bivens,* as he has not sued any individual federal officers in their personal capacities, and instead attempts to sue only the United

States, or its agencies, directly. *See Randall v. United States*, 95 F.3d 339, 345 (4th Cir.1996) ("Any remedy under Bivens is against federal officials individually, not the federal government."); *see also Wilson v. FCI Gilmer*, No. 3:18-CV-42, 2018 WL 3910852, at *2 (N.D.W. Va. July 18, 2018), *report and recommendation adopted*, No. 3:18-CV-42, 2018 WL 3910818 (N.D.W. Va. Aug. 15, 2018) ("Plaintiff has named as defendants FCI Gilmer, a facility which operates under the Bureau of Prisons, and the United States government. Neither defendant is a proper party in a *Bivens* action."); *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002), *aff'd*, 540 U.S. 614 (2004) ("[A] *Bivens* action does not lie against either agencies or officials in their official capacity."); *Lee v. Dir., Fed. Bureau of Prisons*, No. CIV.A. 5:06-CV-00452, 2009 WL 2060116, at *2 (S.D.W. Va. July 8, 2009) ("However, *Bivens* claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities.").

As Plaintiff has not named any defendants which may be sued under the exception to sovereign immunity established in *Bivens*, the undersigned **FINDS** that Plaintiff's claims for monetary damages brought pursuant to *Bivens* must be dismissed.

### 3. Claims against state actors

Plaintiff names only the United States as a defendant in this action and does not allege any cause of action against state actors. However, as noted by Defendant, several of the alleged instances of wrongful conduct took place while Plaintiff was incarcerated within the WRJ, an institution owned and operated by the State of West Virginia. (ECF Nos. 7 at 4-5, 19-4 at 2-4). Plaintiff at times characterizes the constitutional deprivations he suffered at the various locations as being the fault of the United States Marshal's Service. (ECF No. 7 at 5, 7). However, to the extent that Plaintiff claims state officials violated his constitutional rights, he must bring those claim under Section 1983, rather

15

than *Bivens, see Lee*, No. CIV.A. 5:06-CV-00452, 2009 WL 2060116, at *2, and must identify the state officials who violated his constitutional rights. *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71, 109 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *also Preval v. Reno*, 203 F.3d 821 (4th Cir.2000)(unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under § 42 U.S.C.1983"); *Roach v. Burch*, 825 F.Supp. 116 (N.D.W.Va.1993) (The West Virginia Regional Jail Authority is "in effect the State of West Virginia" and is not a person under § 1983). As noted above, given that Plaintiff names only the United States as a defendant and does not specify *any* individual official—state or federal—as a defendant, his amended complaint is fatally flawed.

To the extent that Plaintiff's claims, which took place while he was in state custody, are construed as brought pursuant to § 1983, the undersigned **FINDS** that these claims cannot proceed as stated, because Plaintiff fails to name as defendants individual "persons" as required by federal law.

### 4. Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a lawsuit regarding the conditions of his confinement under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. *See* 42 U.S.C. § 1997(e)(a). Section 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions." *Booth v. Churner*, 532 U.S. 731, 733–34 (2001) (quoting 42 U.S.C. § 1997e(a)). Exhaustion is required even if the inmate seeks only monetary damages and the available administrative remedy does not provide monetary relief. *Id.* at 734. A prisoner bringing a lawsuit under *Bivens* must exhaust available administrative remedies prior to filing the lawsuit in federal court. *See Porter v.*

*Nussle*, 534 U.S. 516, 524 (2002). The available administrative remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (quoting *Booth,* 532 U.S. at 739).

The Bureau of Prisons provides a four-step Administrative Remedy Program for resolving grievances: (1) seeking informal resolution with a staff member; (2) submitting a grievance to the Warden on a "BP–9" form; (3) appealing to the Regional Director on a "BP–10" form within 20 days of the date the Warden signed the response to the grievance; and (4) appealing to the General Counsel of the Central Office on a "BP–11" form within 30 days of the date the Regional Director signed the response to the appeal. *See* 28 C.F.R. § 542.10-542.15; *Luczak v. Coakley*, No. 5:16-CV-189, 2018 WL 4326877, at *6 (N.D.W. Va. Aug. 3, 2018), *report and recommendation adopted*, No. 5:16-CV-189, 2018 WL 4305810 (N.D.W. Va. Sept. 10, 2018).

To effectively exhaust administrative remedies, an inmate must "us[e] all steps that the agency holds out, and do[] so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis original) (quotation omitted). Accordingly, to effectively exhaust the available administrative remedies, a federal inmate who seeks to file a lawsuit regarding the conditions of his confinement, must avail himself of all the stages of review provided by the BOP's Administrative Remedy Program. *See Gibbs v. Bureau of Prison Office*, 986 F.Supp. 941, 943–44 (D.Md.1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where the plaintiff did not appeal his administrative claim through all four stages of the BOP grievance process); *Dowd v. Smith*, No. 5:18-HC-2084-FL, 2018 WL 6492951, at *3 (E.D.N.C. Dec. 10, 2018) (same); *Tucker v. Helbig*, No. 8:13-CV-00401-RMG, 2013 WL 6288674, at *9 (D.S.C. Dec. 4, 2013), *aff'd*, 566 F. App'x 268 (4th Cir. 2014) (same).

Plaintiff admits that, while he did file several "complaints," he "did not file a formal grievance." (ECF No. 7 at 7-8). Defendant submitted a sworn affidavit completed by Howard Williams, the Legal Assistant at the Mid-Atlantic Regional Office of the Federal Bureau of Prisons. (ECF No. 19-8 at 2). Mr. Williams attests that he has reviewed the administrative remedy database and confirmed that Plaintiff has not filed any administrative remedy requests. (*Id.* at 3).

Plaintiff asserts that he was unable to complete the administrative grievance process because each time he attempted to file a grievance, "the [U.S.] Marshals moved the plaintiff to a new facility thus preventing him [from] filing a complaint." (ECF No. 7 at 8). The Supreme Court has held that "a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Thus, exhaustion is mandated even in cases where an inmate "reasonably—even though mistakenly—believed that he had sufficiently exhausted his remedies." *Id.* (quotations omitted).

While judicially recognized exceptions to the exhaustion requirements are not permitted, the *Ross* Court recognized that there is a narrow textual "exception" in that the administrative remedies must be actually "available." *Id.* at 1858. The *Ross* Court specifically mentioned three situations when administrative remedies are considered "unavailable" to prisoners. *Id.* at 1859–60. First, "an administrative procedure is unavailable when … it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859 (citation omitted). Further, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Lastly, an administrative remedy is

unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

If Plaintiff intends to argue that prison administrators conspired to repeatedly transfer him in order to "thwart" his attempts to avail himself of the grievance procedure, thus excusing his failure to exhaust under the third exception recognized in *Ross*, this argument is unavailing. This Court has recognized that transfer from the facility wherein the allegedly wrongful acts occurred does not excuse the obligation to fully exhaust administrative remedies. *De La Cruz-Garcia v. Lucas*, No. CV 1:16-05733, 2017 WL 944221, at *2 (S.D.W. Va. Mar. 10, 2017) ("Administrative remedies must be filed with the facility where the alleged injuries occurred and a transfer to another facility does not nullify this requirement."). Transfer between institutions is an ordinary incident of prison life, and other courts have also viewed transfer as insufficient to excuse a failure to complete the administrative remedial process prior to filing a federal lawsuit. *See Zander v. Lappin*, No. 5:08-CT-3117-FL, 2012 WL 3138012, at *5 (E.D.N.C. Aug. 1, 2012), *aff'd*, 509 F. App'x 203 (4th Cir. 2013) ("To the extent plaintiff asserts that his transfer from Butner to Oakland prevented him from complying with the BOP's administrative remedy procedure, his duty to exhaust is not excused by transfer to another institution."); *see also Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002) ("The fact that [the plaintiff] happened to be a prisoner in various locations, and under the custody of different officials, does not affect his obligation to exhaust his administrative remedies before filing suit."); *Rodriguez v. Senkowski*, 103 F.Supp.2d 131, 134 (N.D.N.Y. 2000) ("[T]he mere fact that [p]laintiff has been transferred to another prison facility does not necessarily render the exhaustion requirement moot."); *Santiago v. Meinsen,* 89 F. Supp. 2d 435, 440 (S.D.N.Y. 2000) (plaintiff's transfer did not excuse failure to exhaust); *Kiro*

*v. Moore*, No. CV 03-1223 JB/ACT, 2005 WL 8163915, at *5 n.4 (D.N.M. Apr. 28, 2005) (same); *Turrietta v. Barreras*, 91 F. App'x 640, 642 (10th Cir. 2004) ("The mere fact that [the plaintiff] was transferred and confined does not direct the conclusion that he was thereby prevented from filing a grievance") (unpublished); *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 223 (6th Cir. 2011) ("Generally, '[t]he transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility 'unavailable' for purposes of exhaustion.'") (quoting *Blakey v. Beckstrom*, No. 06–163–HRW, 2007 WL 204005, at *2 (E.D. Ky. Jan. 24, 2007)); *but see Bradley v. Washington,* 441 F. Supp. 2d 97, 103 (D.D.C. 2006) (concluding that prisoner's transfer from District of Columbia correctional facility into federal custody "rendered unavailable administrative review of his claims ... that occurred at the D.C. Jail" where grievance procedure made "no provision for the submission of complaints by prisoners no longer detained by the Department.").

While in his amended complaint Plaintiff asserts that he was unable to continue the grievance procedure due to his numerous transfers, he does not explain how these transfers prevented him from completing the administrative remedy process. Given that Plaintiff did not exhaust the available administrative remedies required to file a *Bivens* lawsuit, and his argument that transfer prevented him from complying with the exhaustion requirement does not fit into the narrow range of exceptions indicated by the Supreme Court in *Ross,* the undersigned **FINDS** that dismissal of the lawsuit is warranted as Plaintiff failed to properly exhaust the federal administrative remedies available prior to filing his lawsuit.

With respect to his specific complaints against the WRJ, Plaintiff asserts that he was not permitted to leave his cell, except for five minutes every few days, and was not allowed to shower until March 25, 2018, four days after his arrival at the WRJ. (ECF No.

7 at 5). Plaintiff spent a total of eight days at the WRJ before being transferred back to the Carter County Detention Center in Kentucky. Plaintiff does not indicate that he filed a grievance while at the WRJ and certainly did not file grievances concerning the lack of a shower or the amount of time he was forced to spend in his cell. (ECF No. 7 at 7). To the contrary, Plaintiff states that he made "complaints" at the various facilities about his medical care, but not about any other condition of confinement. (*Id.*). Furthermore, Plaintiff does not relate any steps he took to follow up on complaints allegedly made to the WRJ.

In West Virginia, the administrative remedy procedure of an inmate's place of confinement governs the exhaustion process. *White v. Haines*, 618 S.E.2d 423, 431 (W. Va. 2005) ("[B]efore an inmate may bring a civil action challenging the conditions of his/her confinement, he/she must first exhaust the administrative remedies provided by the correctional facility *in which he/she is housed.*") (emphasis added). At the relevant time, exhaustion of administrative remedies in regard to claims involving the conditions of confinement at a regional jail required a final decision from "the Executive Director of the Regional Jail Authority, or the Director's designee." W. Va. Code § 25-1A-2. In general, at the regional jails, inmates were required to follow a three-level grievance procedure. At the first step of the process, the inmate submitted a completed written grievance to the Administrator of the facility at which he was confined. If the grievance was rejected by the Administrator, the inmate had five days to appeal the unfavorable decision to the Chief of Operations. If the Chief of Operations also provided a negative response, the final step for the inmate was to timely appeal the decision to the Executive Director. *See Smith v. Adkins*, No. 3:16-CV-12736, 2018 WL 6017040, at *3 (S.D.W. Va. May 4, 2018), *report and recommendation adopted,* No. 3:16-CV-12736, 2018 WL 4481873 (S.D.W. Va. Sept.

19, 2018). Under the procedure, the grievance process was required to conclude within sixty (60) days, inclusive of any extensions. *McKenzie v. Delong*, No. 1:17CV154, 2018 WL 3435357, at *3 (N.D.W. Va. July 17, 2018) (citing *Chase v. Trent*, No. 1:11CV108, 2012 WL 5845361, at *4 (N.D.W. Va. Oct. 16, 2012), report and recommendation adopted, No. 1:11CV108, 2012 WL 5845219 (N.D.W. Va. Nov. 19, 2012).

As stated, exhaustion of remedies is mandatory and has limited exception. *Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.") (citations and internal quotation marks omitted). The purpose of the exhaustion requirement is twofold: first, "exhaustion protects administrative agency authority" by giving an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court ... and it discourages disregard of the agency's procedures;" second, "exhaustion promotes efficiency," as claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court" and sometimes "claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89, (2006) (citations and internal quotation marks omitted). Further, "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.*

It is clear from the amended complaint that Plaintiff did not exhaust the remedies available at the WRJ. "Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D.W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)). Thus, in view of Plaintiff's failure to properly exhaust his state remedies prior to filing suit, the undersigned **FINDS** that dismissal of § 1983 claims against the WRJ is warranted.

### 5. The Federal Tort Claims Act

Defendant argues that, even if the undersigned construes Plaintiff's *Bivens* lawsuit as instead filed under the Federal Tort Claims Act ("FTCA"), the Complaint still cannot succeed. (ECF No. 20 at 10). In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees. *See* 28 U.S.C. § 1346(b). The statute waives sovereign immunity for claims which are:

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Meyer*, 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b)). As Plaintiff has filed this lawsuit directly against the United States, rather than against individual officers as required under *Bivens*, the undersigned will consider whether Plaintiff's case can proceed if it is

23

construed to be a complaint made under the FTCA, as that statute does permit lawsuits directly against the United States for certain claims.

The FTCA requires that a claim be "presented" to the appropriate agency within two years after the claim accrues. *See* 28 U.S.C. § 2401(b). The Act also imposes an exhaustion requirement, mandating that before a plaintiff may bring a lawsuit in federal court, the plaintiff must "present" his claim to the appropriate administrative agency for determination. *See* 28 U.S.C. § 2675(a). A claim is "deemed to have been presented when a Federal agency receives from a claimant ... an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a). The claim should be "presented to the Federal agency whose activities gave rise to the claim." 28 C.F.R. § 14.2(b)(1). If the agency denies the inmate's claim, he may file suit in federal district court within six months of the mailing of the denial. 28 C.F.R. § 14.9(a). The requirement of filing an administrative claim is jurisdictional and cannot be waived. *See Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994) (citing *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir.1986)).

Accordingly, before a plaintiff can commence a suit against the United States under the FTCA, he must "present [the claim] to the agency in writing by means of an SF 95 or an equivalent; the writing must include a claim for money damages in a sum certain; ... and these matters must be accomplished within two years of the incident." *Id.* at 517. Defendant asserts that Plaintiff has not filed a SF 95 form, or its equivalent, as required for the lawsuit to proceed. (ECF No. 20 at 11). Defendant attaches an affidavit from Mr. Williams, the Legal Assistant at the Mid-Atlantic Regional Office of the Federal Bureau of Prisons, in which Mr. William attests that Plaintiff has not filed any tort claims against

the BOP as indicated by a search of the Administrative Torts Database, or sought relief through the BOP's administrative remedial process as indicated by a search of the administrative remedy database. (ECF No. 19-8 at 3).

Plaintiff stated in his amended pleading that he filed several "complaints" related to the alleged failure to provide medical care, but did not file a "formal" grievance. (ECF No. 7 at 8). Plaintiff alleged in his "complaints" he required hospitalization due to his condition, but his request was not granted. (*Id.* at 7). In response to a question on the form asking how Plaintiff appealed these decisions, Plaintiff explained that he "asked to see the nurse, the doctor, the Sargent [sic] and the captain," but was only ever seen by the nurse. (*Id.*). Plaintiff did not indicate whether these complaints were submitted in writing or verbally, or to whom they were submitted; however, they clearly were not filed pursuant to form SF 95, nor were they an "equivalent" to that form, in that they did not "include a claim for money damages in a sum certain." *Ahmed*, 30 F.3d at 517. Moreover, as Defendant points out, this Court has held that grievances submitted pursuant to "[t]he BOP's administrative remedy program, which allows inmates to file complaints regarding any issue with the prison, staff, or conditions of confinement, is not a substitute for the proper presentation of a tort claim under the FTCA." *Perry v. Coakley*, No. 5:15-CV-13345, 2016 WL 4744167, at *2 (S.D.W. Va. Sept. 12, 2016); *see also De La Cruz-Garcia,* No. CV 1:16-05733, 2017 WL 944221, at *2 ("Furthermore, any attempt to rely on grievances filed through the BOP's administrative remedy program does not save his FTCA claim because, as noted above, they are not one and the same.").

"Litigants must strictly comply with the requirements of the FTCA before this Court obtains jurisdiction to consider such claim." *De La Cruz-Garcia,* No. CV 1:16-05733, 2017 WL 944221, at *3 (quotation omitted). The record reveals that Plaintiff

"never filed an administrative tort claim with the BOP" as required to exhaust his claim under the FTCA. *Id.* To the extent that Plaintiff did submit several "complaints" regarding the allegedly inferior medical care he received, these complaints did not comply with the strict exhaustion requirements imposed by the FTCA. *See Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000) ("Failure to request a sum certain within the statute of limitations deprives a district court of jurisdiction over any subsequently filed FTCA suit."); *see also Whitney v. United States*, No. 2:09CV201, 2009 WL 9130455, at *2 (E.D. Va. July 28, 2009) (dismissing lawsuit where the plaintiff filed several letters of complaint and "certainly made his position and displeasure known," but did not comply with the strict presentation requirements of the FTCA.); *De La Cruz-Garcia,* No. CV 1:16-05733, 2017 WL 944221, at *3 ("[P]laintiff's contention that his complaints to various BOP personnel regarding his medical care were sufficient to satisfy the [FTCA] exhaustion requirement is without merit.").

As Plaintiff did not file a Form SF 95, or its equivalent, to the BOP regarding his medical care, the undersigned **FINDS** that if Plaintiff's lawsuit is construed as a claim filed under the FTCA, he is still unable to proceed given that he has failed to comply with the exhaustion requirements imposed by that statute.

### 6. Injunctive relief is moot

Lawsuits seeking monetary compensation and brought pursuant to *Bivens,* may not lie against the United States, its agencies, or federal officials acting in their official capacities. *See Doe v. Chao,* 306 F.3d 170, 184 (4th Cir. 2002), *aff'd*, 540 U.S. 614 (2004). However, in *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized a narrow exception to the general rule that a plaintiff may not file a lawsuit directly against a state, if he seeks "prospective injunctive relief against state officials acting in violation

of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). This exception extends not only "to violations of federal law by state officials, but also with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015). "While a suit for damages against a federal official in his or her official capacity is deemed a suit against the federal government or its agencies and is, therefore, barred by sovereign immunity, a suit for prospective equitable relief, however, is not so deemed and is, therefore, not barred by sovereign immunity." *Everett v. Francis*, No. CIV.A.5:07CV135, 2009 WL 2971359, at *4 (N.D.W. Va. Sept. 16, 2009). Accordingly, a plaintiff "may seek injunctive relief against a federal officer in his or her official capacity." *Saunders v. Johnson*, No. CV 1:16-10159, 2017 WL 9516556, at *6 (S.D.W. Va. July 24, 2017), *report and recommendation adopted*, No. CV 1:16-10159, 2017 WL 4310766 (S.D.W. Va. Sept. 28, 2017).

Plaintiff did seek prospective injunctive relief in his amended complaint by asking this Court to order that he be provided with specific medical care, but Plaintiff failed to name a federal official as a defendant. (ECF No. 7). Regardless of whether Plaintiff named a defendant who could properly be enjoined to provide prospective injunctive relief, however, Plaintiff's claims for injunctive relief are precluded because his subsequent transfer from the implicated facilities has mooted his claims.

As a prerequisite to the exercise of federal jurisdiction, the complaint before the court must present an actual case or justiciable controversy. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d.

689, 693-94 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Action by a defendant that simply accords all the relief demanded by the plaintiff may moot an action." *W. Virginia Highlands Conservancy v. Norton*, 161 F. Supp. 2d 676, 679 (S.D.W. Va. 2001) (citing 13A Federal Practice and Procedure § 3533.2). A case becomes moot, and accordingly no longer falls within the court's subject matter jurisdiction, when it is "impossible for a court to grant any effectual relief whatever to a prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Service Employees*, 567 U.S. 298, 307 (2012)).

Defendant argues that this Court has recognized the removal of a plaintiff from a prison will generally moot his claims for injunctive relief with respect to that institution. (ECF No. 20 at 12-13). Defendant points out that, at the time of Defendant's filing, Plaintiff had been transferred to USP Canaan, located in Wayne County, Pennsylvania. (ECF Nos. 19-7 at 2, 20 at 14). Defendant is correct that "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir.2007).

A narrow exception to the mootness doctrine exists for claims that are "capable of repetition, yet evading review." *Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007). However, "[j]urisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation in which (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Incumaa*, 507 F.3d 281, at 289 (internal quotation marks and citations omitted). Plaintiff is currently incarcerated at a Residential Reentry Management field office in Brooklyn, New York ("RRM New York) with a projected release date of June 17, 2019. *See* BOP inmate locator at https://www.bop.gov/inmateloc/. Plaintiff did not respond to Defendant's Motion to Dismiss, and has provided no indication that the complained of conduct is continuing at RRM New York.

When considering a similar case, where an inmate alleged his constitutional rights had been infringed by the practices of a prison, this Court held that "[s]ince [p]laintiff is currently located at a halfway house and his release date is fast approaching, the undersigned finds no reasonable expectation that [p]laintiff will be subjected to [the] same alleged misconduct at" the prison where the alleged wrongs occurred. *Owens v. FCI Beckley*, No. 5:12-CV-03620, 2013 WL 4519803, at *8 (S.D.W. Va. Aug. 27, 2013). Similarly, in *Hancock v. Rickard*, this Court considered a complaint by an inmate alleging, among other things, that he was being denied adequate medical care. *See* No. CV 1:18-00024, 2018 WL 4496660, at *1-2 (S.D.W. Va. Aug. 13, 2018), *report and recommendation adopted*, No. CV 1:18-00024, 2018 WL 4495474 (S.D.W. Va. Sept. 19, 2018). This Court determined that Plaintiff's request for injunctive relief regarding the

deficient medical care was moot as he had been transferred from the facility where the constitutional violations allegedly took place. *Id.* at *4. This Court noted that the plaintiff's transfer meant he was no longer in the custody of those allegedly providing deficient medical care, and he did not allege that the new facility was continuing to deny his requested medication. *Id.*

Similar considerations in this case dictate the same result. Plaintiff complains of deficient medical care provided while he was incarcerated within several separate facilities. (ECF No. 7 at 4). However, Plaintiff has since been transferred from those facilities and currently is housed in a residential reentry facility in New York. Plaintiff has not asserted that he is continuing to receive inadequate medical care at the New York facility, nor has he provided any indication that he is likely to be transferred back to one of the facilities in which the constitutional violations allegedly occurred. Plaintiff's projected release date of June 17, 2019 makes it exceedingly unlikely that he in fact will be transferred back to one of the facilities and be again subject to the same conditions.

Accordingly, the undersigned **FINDS** that Plaintiff's claims for injunctive relief have been rendered moot by his transfer from the facilities where the alleged constitutional violations occurred.

In summary, the undersigned has considered all of Plaintiff's claims and concluded that Plaintiff's claims for monetary damages must be dismissed because Plaintiff failed to name a proper defendant under *Bivens,* and failed to exhaust his administrative remedies as required for lawsuits filed pursuant to *Bivens*, as well as those filed under § 1983 and the FTCA. The undersigned has further determined that Plaintiff's claims for injunctive relief are moot as there is no longer a live or present controversy as required by the

Constitution. Therefore, the undersigned **FINDS** that Plaintiff's complaint should be dismissed as there are no remaining viable claims.

## IV.　**Proposal and Recommendations**

For the reasons set forth above, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendant's Motion to Dismiss (ECF No. 19); **DISMISS** the Amended Complaint, **with prejudice**, (ECF No. 7); and **REMOVE** this matter from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, Defendant, and any counsel of record.

**FILED:** June 14, 2019

_____
Cheryl A. Eifert
United States Magistrate Judge